UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NDF1, LLC,

                                    *Plaintiff,*

        – against –

DALTON CUNNINGHAM, *et al.*,

                                    *Defendants.*

**MEMORANDUM & ORDER**
24-cv-00002 (NCM) (JAM)

**NATASHA C. MERLE**, United States District Judge:

Plaintiff NDF1, LLC brings this foreclosure action against defendant Queens Capital Holdings, LLC ("Queens Capital"), and individual defendant Dalton Cunningham.[1] *See generally* Am. Compl. ("AC"), ECF No. 55. Plaintiff moves for an order entering summary judgment against defendants and dismissing defendants' affirmative defenses. *See* Mot. 8.[2] For the reasons stated below, plaintiff's motion for summary judgment is **GRANTED**.

---

[1]    Defendants Consolidated Edison Company of New York, City of New York Environmental Control Board, and the New York City Department of Finance are named in the amended complaint as necessary parties to the action because they are judgment creditors or tax lien holders against the subject property. AC ¶¶ 4–7. Additionally, the subject property's tenants—Marcia Graham, Aerline Foulkes, Mandessa Brooks, and Aushien Shaw—are listed in the amended complaint as "nominal defendants." AC ¶¶ 8–11.

[2]    The Court hereinafter refers to the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and Judgment of Foreclosure and Sale, ECF No. 78-1, as the "Motion"; Defendant Queens Capital Holdings, LLC's Memorandum of Law in Opposition to Plaintiff's Motion, ECF No. 87, as "Queens Opp'n"; Defendant Cunningham's Memorandum of Law in Opposition to Plaintiff's Motion, ECF No. 87-3, as "Cunningham Opp'n"; and the Reply Memorandum of Law in Further Support of

## BACKGROUND

### I.    Factual Background

The following facts are taken from the parties' statements pursuant to Local Civil Rule 56.1, specifically plaintiff's 56.1 statement ("NDF1 56.1"), *see* ECF No. 78-2, Queens Capital's counter 56.1 statement ("Queens 56.1"), *see* ECF No. 87-1, and Cunningham's counter 56.1 statement ("Cunningham 56.1"), *see* ECF No. 87-4. On November 3, 2006, Cunningham executed a fixed rate note in the amount of $84,000 plus interest at an annualized rate of 12.35% in favor of non-party Argent Mortgage Company, LLC (the "Note"). Cunningham 56.1 ¶ 1. As security for the Note, Cunningham executed a mortgage encumbering premises located at 142-21 230th Place, Rosedale, New York 11422 (the "Mortgage," together with the Note, the "Loan"). Cunningham 56.1 ¶ 3. Argent's interest in the Mortgage was assigned three times before it was eventually assigned to plaintiff. Cunningham 56.1 ¶¶ 4–8.

Beginning on April 1, 2007, Cunningham failed to pay the regular monthly payment due under the Loan. Cunningham 56.1 ¶ 15. In failing to do so, Cunningham "breached his obligation under the Note and Mortgage[.]" Cunningham 56.1 ¶ 15. Cunningham failed to make all subsequent regular monthly payments on the Loan. Cunningham 56.1 ¶ 15. On February 22, 2022, Cunningham sold the property to Queens Capital for $20,000. Cunningham 56.1 ¶¶ 11–12; Queens 56.1 ¶¶ 11–12. Queens Capital purchased the property subject to the Mortgage. Queens 56.1 ¶ 13. Queens Capital has not made any payments toward the Loan. Queens 56.1 ¶ 14.

---

Plaintiff's Motion, ECF No. 87-6, as the "Reply." Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

Plaintiff contends that its prior counsel mailed notice of default letters to Cunningham on March 19, 2021, at the address of the subject property as well as Cunningham's last known residential address. NDF1 56.1 ¶ 18; *see also* Decl. of Armando Calvillo Ex. E at Ex. C, pp. 50–58 ("Notice of Default"), ECF No. 78-26. Cunnningham disputes this but does not cite any evidence to controvert the Notice of Default, including the certified mail receipts. Cunningham 56.1 ¶ 18; *see* NDF1 56.1 ¶ 18. Plaintiff further asserts that on that same day its prior counsel also mailed statutory notices to Cunningham pursuant to New York Real Property Actions & Proceedings Law ("RPAPL") § 1304, informing him that he was in default and his home was at risk of foreclosure. NDF1 56.1 ¶ 19; *see also* Decl. of Armando Calvillo Ex. E at Ex. B, pp. 16–49 ("90-Day Notices"), ECF No. 78-26. Cunningham does not specifically dispute that the 90-Day Notices were mailed to him at the subject property and his last known address, but he alleges that the Notices are "defective on their face." Cunningham 56.1 ¶ 19.

Plaintiff states that two days later its prior loan servicer—Statebridge Company, LLC—electronically filed the 90-Day Notices with New York State's Superintendent of the Department of Financial Services pursuant to RPAPL § 1306(2). NDF1 56.1 ¶ 20; *see also* Decl. of Statebridge Co., LLC Ex. 1 ("Section 1306 Notice"), ECF No. 78-4. Cunningham does not dispute that the Section 1306 Notice was filed, but he argues that it too is "defective on its face." Cunningham 56.1 ¶ 20. Although Cunningham has been in default on the Loan since 2007, plaintiff asserts that at some point it "advanced" the due date on the Loan to December 1, 2017, "to ensure that any and all amounts it seeks to collect" by the instant action are within the statute of limitations. NDF1 56.1 ¶ 29. Defendants dispute this without providing any evidence to the contrary. *See* Queens 56.1 ¶ 29; Cunningham 56.1 ¶ 29.

3

## II.    Procedural Background

Plaintiff commenced this action to foreclose on the Mortgage pursuant to the Court's diversity jurisdiction on January 2, 2024. Queens 56.1 ¶ 21; Cunningham 56.1 ¶ 21. On January 30, 2024, the Court issued an Order to Show Cause why the action should not be dismissed for lack of federal subject matter jurisdiction. *See* ECF Order dated January 30, 2024. In the Order, the Court noted that plaintiff had not sufficiently alleged the identity and citizenship of the parties to establish the existence of diversity jurisdiction. Plaintiff responded to the Order on February 12, 2024, with an amended corporate disclosure statement, a declaration from plaintiff's attorney, a declaration from one of plaintiff's members, and various exhibits to establish that the parties are completely diverse. *See* Am. Corp. Disclosure Statement, ECF No. 20; Decls. in Support of Am. Corp. Disclosure Statement, ECF Nos. 20-1, 20-2.

On March 6, 2025, plaintiff filed the instant motion for summary judgment against Queens Capital and Cunningham. Mot. Plaintiff filed a motion for default judgment against the remaining defendants that same day. *See* Not. of Mot., ECF No. 79. The Court held a status conference the following month, during which plaintiff agreed to withdraw its motion for default judgment without prejudice "pending adjudication of any liability of the non-defaulting defendants." ECF Minute Entry dated April 22, 2025; *see also* ECF No. 84.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13

F.4th 247, 259 (2d Cir. 2021).[3] Facts are in genuine dispute when "the jury could reasonably find for" the non-moving party based on the evidence in the record. *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021).

The movant "bears the initial burden of showing that there is no genuine dispute as to a material fact." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). Where the moving party meets their burden, the non-moving party must provide sufficient evidence establishing a genuine issue of material fact beyond "[t]he mere existence of a scintilla of evidence." *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012). The court need only consider admissible evidence, and is not obligated to conduct an independent review of the record to identify a factual dispute. *Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 340 (E.D.N.Y. 2021).

## DISCUSSION

### I.    Prima Facie Foreclosure

Federal courts sitting in diversity apply the substantive law of the forum state. *Burt Rigid Box, Inc. v. Traveler's Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002). Under New York law, "a plaintiff establishes its prima facie entitlement to summary judgment" in a foreclosure action "by producing evidence of the mortgage, the note, and the defendant's default." *Gustavia Home, LLC v. Rutty*, 785 F. App'x 11, 14 (2d Cir. 2019) (summary order). Accordingly, where the note and mortgage are produced to the court, "along with proof that the [m]ortgagor has failed to make payments due under the [n]ote," then "summary judgment in a mortgage foreclosure action is appropriate[.]" *Bank of Am., N.A. v. Commack Props., LLC*, No. 09-cv-05296, 2010 WL 5139219, at *4 (E.D.N.Y. Dec. 10,

---

[3]    Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

2010). "Once a plaintiff mortgagee in a foreclosure action has established a prima facie case[,] it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor." *Golden Bridge LLC v. DGS18 Realty LLC*, No. 22-cv-05857, 2024 WL 22784, at *2 (E.D.N.Y. Jan. 2, 2024). Thus, summary judgment will be appropriate unless the defendant can "demonstrate the existence of a triable issue of fact as to a bona fide defense to the action, such as waiver, estoppel, bad faith, fraud, or oppressive or unconscionable conduct on the part of the plaintiff." *Gustavia Home*, 785 F. App'x at 14.

Here, plaintiff has established a prima facie entitlement to a judgment of foreclosure. Plaintiff has presented evidence of the Note and the Mortgage. *See* Decl. of Armando Calvillo Exs. A–B, ECF Nos. 78-22, 78-23; *see also* Queens 56.1 ¶¶ 2–3; Cunningham 56.1 ¶¶ 2–3. Next, plaintiff has established defendants' default on their obligations under the Mortgage. Indeed, Cunningham concedes that he "breached his obligation under the Note and Mortgage by failing to pay the regular monthly payment which came due on April 1, 2007, and all subsequent payments." Cunningham 56.1 ¶ 15. And Queens Capital does not dispute that it purchased the property subject to the Mortgage, and admits that it has not made any payments toward the Mortgage. Queens 56.1 ¶¶ 13–14. Together, these undisputed facts establish plaintiff's prima facie entitlement to foreclosure. *See U.S. Bank, N.A. v. Byrd*, 854 F. Supp. 2d 278, 284 (E.D.N.Y. 2012) ("[S]ummary judgment in a mortgage foreclosure action is appropriate where the note and mortgage are produced to the [c]ourt along with proof that the mortgagor has failed to make payments due under the note."); *Regency Sav. Bank, F.S.B. v. Merritt Park Land Assocs.*, 139 F. Supp. 2d 462, 465 (S.D.N.Y. 2001) (same).

6

Nevertheless, defendants raise two primary arguments to refute plaintiff's prima facie case. First, they argue that the evidence plaintiff submits to substantiate defendants' default is inadmissible, or that such evidence is deficient on its face. *See* Queens Opp'n 12–13; Cunningham Opp'n 7–9. Second, defendants argue that there are "temporal gaps in payment history" on the subject property, thus precluding a finding of default. *See* Queens Opp'n 13–14; Cunningham Opp'n 9.

A. *Loan Documents*

In support of its Motion, plaintiff submitted declarations from two individuals with knowledge of the Loan documents and defendants' default: Augustina Abeyta and Armando Calvillo. *See* Decl. of Statebridge Company, LLC in Supp. of Pl.'s Mot. ("Abeyta Decl."), ECF No. 79-3; Decl. of Armando Calvillo in Supp. of Pl.'s Mot. ("Calvillo Decl."), ECF No. 78-21. Abeyta is the default and foreclosure manager of Statebridge Company, LLC—plaintiff's prior loan servicer. Abeyta Decl. ¶ 1; *see also* Calvillo Decl. ¶ 21. Calvillo is a "duly authorized representative of NDF1, LLC." Calvillo Decl. ¶ 1. Defendants suggest that these declarations are inadmissible—and, thus, plaintiff cannot lay the proper evidentiary foundation for the Loan documents, Cunningham Opp'n 9—because Abeyta and Cunningham are not competent to testify about the matters therein. *See* Cunningham Opp'n 6–9. For example, defendants argue that Abeyta's declaration is inadmissible hearsay because she "fails to demonstrate that Statebridge is the servicer for [p]laintiff or has any authority to make representations or take actions on its behalf[.]" Cunningham Opp'n 6; *see also* Queens Opp'n 14–15. As to Calvillo, Cunningham argues that his declaration should be disregarded because Calvillo "does not claim to hold any title or position with [p]laintiff whatsoever." Cunningham Opp'n 7. Defendant thus urges the Court to "disregard" the declaration "in its entirety in the absence of any allegation that

7

[Calvillo] is an employee or any indication of the nature of his agency, direct or through an intermediary." Cunningham Opp'n 9. Moreover, according to Cunningham, Calvillo "does not state how he came to purportedly have knowledge of [p]laintiff's business records." Cunningham Opp'n 7. These arguments are plainly without merit.

For one, Abeyta's declaration—made under the penalty of perjury—in which she states that Statebridge was "the prior loan servicer for the [p]laintiff," Abeyta Decl. ¶ 1— is admissible evidence demonstrating that Statebridge was plaintiff's prior loan servicer, *see Knox v. CRC Mgmt. Co.*, 134 F.4th 39, 49 (2d Cir. 2025) ("Testimony, of course, includes sworn statements made in depositions or declarations under the penalty of perjury."). Moreover, other evidence in the record demonstrates that Statebridge was in fact plaintiff's prior loan servicer. *See* Calvillo Decl. ¶ 21 ("Plaintiff's prior loan servicer, Statebridge Company, LLC . . . ."); *see also* Abeyta Reply Decl. Ex. 2, ECF No. 87-10. To the extent defendants argue that Abeyta fails to demonstrate she "has authority to make representations or take actions" on plaintiff's behalf, Cunningham Opp'n 6; *see also* Queens Opp'n 14–15, they fail to explain why Abeyta's supposed lack of authority to make representations on plaintiff's behalf impacts the admissibility of her declaration. Indeed, her declaration is submitted for the purpose of making representations on Statebridge's behalf, namely, that Statebridge filed the Section 1306 Notice. *See* Abeyta Decl. ¶ 14; *see also* Mot. 32–33; Reply 9 ("[T]he Abeyta Declaration (on behalf of Statebridge) was not submitted to attest to the amount due to [p]laintiff; the Declaration of Calvillo (on behalf of [p]laintiff) was submitted for this reason. The Abeyta Declaration was submitted because Statebridge completed the RPAPL 1306 filing statement.").

Cunningham's argument that Calvillo's declaration is inadmissible is equally unavailing. At the outset, defendant supplies no authority for the proposition that Calvillo

is not competent to testify because he holds no formal position at NDF1. *See* Cunningham Opp'n 7; *see also Citibank, N.A. v. Hello Flatbush LLC*, No. 23-cv-10920, 2025 WL 2370888, at *4 (S.D.N.Y. Aug. 14, 2025) ("The Second Circuit has further observed that a proper witness need not be an employee of the entity that owns and prepared the documents nor have any first-hand knowledge of the document's creation.") (quoting *Jacobson v. Empire Elec. Contractors*, 339 F. App'x 51, 54 (2d Cir. 2009) (summary order)). As Cunningham's cited case reflects, a declaration is admissible so long as the declarant demonstrates "personal knowledge" of the facts therein. *See* Cunningham Opp'n 7–8 (quoting *SSA NE Assets LLC v. Burstyn LLC*, 2024 N.Y. Slip Op. 31254(U) (Sup. Ct. Apr. 2, 2024)); *see also Buehlman v. Ide Pontiac, Inc.*, 345 F. Supp. 3d 305, 312 (W.D.N.Y. 2018) ("[A] declaration by an individual with personal knowledge is sufficient to support a motion for summary judgment."). And for admissibility purposes, "[i]t is enough to show sufficient familiarity with a business's record-keeping practices," for instance, by attesting to "review of and familiarity with the records at issue[,] and knowledge that the business creates and maintains records in the regular course of business activities[.]" *Flatbush*, 2025 WL 2370888, at *4.

That is precisely what Calvillo attests to here. *See* Calvillo Decl. ¶¶ 3, 5. Contrary to Cunningham's assertion, Calvillo does explain how he came to have personal knowledge of NDF1's business records: he "personally examined [p]laintiff's [b]usiness [r]ecords associated with the property." Calvillo Decl. ¶ 5. Moreover, Calvillo declares that he is a "duly authorized representative of NDF1, LLC" and that, "in the regular performance of [his] job functions, [he is] familiar with the business records maintained by [p]laintiff." Calvillo Decl. ¶¶ 1, 3. This is sufficient to demonstrate Calvillo's personal knowledge of the facts, and thus his declaration is admissible and lays a proper foundation for the attached

Loan documents. *See U.S. Bank N.A. as Tr. for Registered Holders of Wells Fargo Com. Mortg. Pass-Through Certificates, Series 2019-SB63 v. 1078 Whillmore LLC*, 740 F. Supp. 3d 157, 173–74 (E.D.N.Y. 2024) (rejecting argument that loan documents attached to declaration of special servicer were not properly authenticated where the declarant did "not specify whether [he] was personally familiar with [the] [p]laintiff's record-keeping practice and procedures" because the declarant stated that the exhibits were "create[d], receive[d], and maintaine[d] in the regular course of the [s]pecial [s]ervicer's business activities"); *see also Blue Castle (Cayman) Ltd. v. Miller*, 772 F. Supp. 3d 416, 423–24 (S.D.N.Y. 2025) (explaining that affidavit from the plaintiff's "authorized representative" attesting to "his personal knowledge of the authenticity of the attached note" was sufficient to properly authenticate the note where the note was a business record and the representative, "in the regular performance of his job functions[,] [wa]s familiar with such records").

### B. Payment History Records

Even if the Abeyta and Calvillo declarations are admissible, defendants argue that plaintiff still fails to substantiate default because there are "glaring defects" with respect to the records plaintiff submits with its Motion, specifically the payment history of the Loan. Queens Opp'n 12–15; *see also* Cunningham Opp'n 9. In support of its Motion, plaintiff submits a "copy of the [t]ransaction [h]istory" of the Loan, Calvillo Decl. ¶ 16, as well as a "Loan History Summary" document prepared by Statebridge, *see* Calvillo Decl. Ex. G ("Loan History Summary Document"), ECF No. 79-20. The transaction history of the Loan shows two unspecified fee-related transactions with an effective date of November 8, 2007, and the next transaction—a third-party fee transaction—occurring on February 26, 2018. Loan History Summary Document 2. Defendants do not contend that

either transaction was a payment toward the Mortgage. *See* Queens 56.1 ¶ 14; Cunningham 56.1 ¶ 15. However, Queens Capital argues that these records fail to substantiate the default date because plaintiff does not "specifically provide which loan the[] records correspond to," nor does plaintiff provide information as to "which entity" created the records. Queens Opp'n 13. In a similar vein, Cunningham argues that the Loan History Summary Document was "clearly prepared for the purpose of litigation," and is thus not admissible as a business record pursuant to Federal Rule of Evidence 803(6). Cunningham Opp'n 9. Aside from the admissibility of the document, defendants suggest that it still does not establish the purported default date because there are "temporal gaps" in the records. *See* Queens Opp'n 13–14; Cunningham Opp'n 9. That is, because plaintiff asserts that the default date on the Loan was advanced to December 1, 2017, NDF1 56.1 ¶ 29, and that date falls within a "gap" of transaction history from November 9, 2007 through February 26, 2018, plaintiff has failed to substantiate the default date. Queens Opp'n 14; *see* Cunningham Opp'n 9.

Defendants' arguments are unavailing. First, as plaintiff points out, Calvillo's Declaration expressly specifies that the payment history records pertain to the Loan. Calvillo Decl. ¶ 16 ("A copy of the Transaction History, which incorporates the records of prior servicers and/or owners of the Loan . . . is attached hereto as Exhibit G."). To the extent defendants argue that "there is no information as to which entity created this record," Queens Opp'n 13—"[s]o long as the records are both integrated into a company's records and relied on in that company's day-to-day activities, . . . even if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity." *1078 Whillmore*, 740 F. Supp. 3d at 174; *see also Wexler v. LVNV Funding*, No. 22-cv-01348, 2023 WL

4305776, at *6 (S.D.N.Y. June 30, 2023) ("[T]he [Second] Circuit has repeatedly held admissible documents created by third-party entities where testimony established that those documents had been incorporated into the [company's] business records, and were relied upon in its day-to-day operations."). That is exactly what the Calvillo Declaration sets forth. *See* Calvillo Decl. ¶ 4 ("[B]usiness records . . . created by prior or current services or prior holders of [the] Loan . . . have been integrated into [p]laintiff's business records . . . and are kept and relied upon as a regular business practice and in the ordinary course of business conducted by [p]laintiff.").

Finally, Cunningham's unsupported assertion that the Loan History Summary Document—which contains information on transactions predating the instant litigation—was "clearly prepared for the purpose of litigation," Cunningham Opp'n 9, is insufficient to bar its admissibility. *See* Calvillo Decl. ¶ 16 (explaining that Loan History Summary Document "incorporates the records of prior servicers and/or owners of the Loan"). The fact that a business record is used in support of litigation, alone, does not take business records outside the hearsay exception. *Seven Corners Shopping Ctr. Falls Church, Va. Ltd. P'ship v. Chesapeake Enters. USA LLC*, No. 07-cv-06332, 2010 WL 5253525, at *3 (W.D.N.Y. Dec. 16, 2010) ("The fact that plaintiff printed out the summary to use in connection with this litigation does not convert the business record into inadmissible hearsay."). Further, "material relied on at summary judgment need not be admissible in the form presented to the district court[,] [r]ather, so long as the evidence in question will be presented in admissible form at trial, it may be considered on summary judgment." *Wilmington PT Corp. v. Gray*, No. 19-cv-01675, 2025 WL 857979, at *5 (E.D.N.Y. Mar. 19, 2025) (quoting *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (summary order)). And here, Calvillo's "description of the materials upon which he relied

12

for his conclusions," *id.*, including the Loan History Summary Document incorporating the records of prior Loan servicers—records which, in turn, "have been integrated into [p]laintiff's business records—[we]re verified in accordance with [p]laintiff's policies and procedures, and are kept and relied upon as a regular business practice and in the ordinary course of business conducted by [p]laintiff," Calvillo Decl. ¶ 4, "demonstrates that the underlying records would be admissible as business records at trial," *Wilmington*, 2025 WL 857979, at *5. *See also Atl. Specialty Ins. Co. v. Coastal Env't Grp.*, 368 F. Supp. 3d 429, 451 n.7 (E.D.N.Y. 2018) ("Third-party records may be admitted under the business records exception[] where those records have been integrated into another business entity's records and relied on by the business entity."); *Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*, No. 09-cv-05935, 2011 WL 3874878, at *15 (S.D.N.Y. Aug. 31, 2011) ("[T]he Second Circuit has stated that business records are admissible if witnesses testify that the records are integrated into an office's records and relied upon in its day-to-day operations.") (quoting *United States v. Mendel*, 746 F.2d 155, 166 (2d Cir. 1984)).

Defendants' argument that there are "temporal gaps" in plaintiff's payment records fares no better. *See* Queens Opp'n 14; Cunningham Opp'n 9. Defendants point out that the Loan History Summary Document contains "gaps . . . from November 9, 2007, through February 26, 2018." Cunningham Opp'n 9; *see also* Queens Opp'n 14. However, defendants do not explain how these "gaps" raise a triable issue of fact as to defendants' default. For instance, defendants do not assert that they made any payments toward the Mortgage between November 9, 2007 and February 26, 2018. *See* Queens 56.1 ¶ 14; Cunningham 56.1 ¶ 15. Indeed, Cunningham admits that he "breached his obligation under the Note and the Mortgage by failing to pay the regular monthly payment which

came due on April 1, 2007, and all subsequent payments." Cunningham 56.1 ¶ 15. And Queens Capital admits that it "has not made any payments toward the Loan." Queens 56.1 ¶ 14. Thus, because "[t]here is zero evidence that any transactions took place between November 9, 2007, and February 25, 2018 which would have necessitated transactions between those dates[,]" Reply 7, the supposed gap in transaction history does not preclude plaintiff's prima facie case.[4] *See 1078 Whillmore LLC*, 740 F. Supp. 3d at 176 ("The Court questions how the [defendants] can argue in good faith that the default has not been established upon competent, admissible evidence. The [defendant's guarantor's] own [a]ffidavit provides all the evidence that the Court needs of the [b]orrower's payment default.").

Moreover, other evidence in the record plainly establishes defendants' default. First, Calvillo's statement that the "Loan is currently in default and due for the April 1, 2007 payment and all subsequent payments," is sufficient evidence on its own to satisfy

---

[4]    Defendant Cunningham's reliance on *FTS Capital, LLC v. Stuyvesant 7 Construction Corp.*, No. 19-cv-07275, 2024 WL 1014120 (E.D.N.Y. March 8, 2024), for the proposition that a plaintiff has not met its burden on summary judgment in a foreclosure action where the "mortgage records proffered by [the] plaintiff have gaps in the timeline," is misplaced. Cunningham Opp'n 7 (quoting *FTS Capital, LLC*, 2024 WL 1014120, at *5). In *FTS Capital*, the plaintiff-LLC alleged in its complaint and in a supporting affidavit from its sole member that the defendant defaulted on a mortgage by failing to make payment due on January 1, 2014. *See FTS Capital, LLC*, 2024 WL 1014120, at *5. However, the payment records supplied by the plaintiff spanned only a period from 2007 to 2013, "with a service release date noted as February 20, 2012, indicating that was the date the loan servicer ceased service on the loan." *Id.* Because the payment record document did not contain payment history as of the alleged default date, the court reasoned that it was "not clear that th[e] document establishe[d] default as of the [d]efault date due to a temporal gap in the records[,]" including because the plaintiff provided no evidence establishing that no payments were received after the prior loan servicer ceased service on the loan. *See id.* Here, by contrast, plaintiff's document does supply transaction history following defendant's default, *see generally* Loan History Summary Document, and defendants concede that they have not made any payments following default on the Mortgage, *see* Cunningham 56.1 ¶ 15; Queens 56.1 ¶ 14.

plaintiff's prima facie burden. Calvillo Decl. ¶ 17; *see Golden Bridge LLC v. DGS18 Realty LLC*, No. 22-cv-05857, 2025 WL 921098, at *9 (E.D.N.Y. Mar. 27, 2025) ("[Plaintiff's CEO's] declaration, based on his personal knowledge, that [the] [d]efendants were in default after January 2022 is sufficient in and of itself to satisfy [p]laintiff's prima facie burden of proving default.") (collecting cases); *Wilmington*, 2025 WL 857979, at *5 (rejecting argument that affidavit from the plaintiff's authorized signatory stating that defendant defaulted could not alone establish the defendant's default and observing that "courts have accepted similar affidavits as proof of default") (collecting cases). Additionally, the Notice of Default and 90-Day Notices mailed to Cunningham also establish defendants' default, particularly where, as here, Cunningham does not dispute that he defaulted under the Loan. *See Wilmington*, 2025 WL 857979, at *5 ("Additional evidence in the record further establishes that the defendant defaulted. The plaintiff submitted copies of the default notice and the 90-day pre-foreclosure notice along with proof that the plaintiff mailed both notices to the defendant. The defendant does not deny that she received these documents and does not maintain that she cured the default. The evidence of the defendant's default is therefore uncontroverted and sufficient.").

\*       \*       \*

Accordingly, because plaintiff has provided evidence of the Note, Mortgage, and of defendants' default thereunder, plaintiff has established its prima facie entitlement to a judgment of foreclosure.

## II.    Affirmative Defenses

Plaintiff next moves for summary judgment on all of defendants' affirmative defenses. Mot. 15–40. In response, Queens Capital raises arguments in support of its sixteenth and eighteenth affirmative defenses: that the amount-in-controversy

requirement has not been met, and that plaintiff's claims are barred in whole or in part by the statute of limitations, respectively. Queens Opp'n 15–16; *see* Queens Capital's Answer to Compl. ¶¶ 44, 46, ECF No. 24. In his Opposition, Cunningham raises arguments in support of his second, third, and fourteenth affirmative defenses: that the Court does not have diversity jurisdiction; that plaintiff failed to send required notices prior to commencing this action; and that plaintiff failed to satisfy conditions precedent to foreclosure, respectively. Cunningham Opp'n 10–13; *see* Cunningham's Answer to Compl. ¶¶ 31–32, 43, ECF No. 26.

As a threshold matter, having failed to present arguments in opposition to plaintiff's motion for summary judgment as to their other affirmative defenses, defendants' remaining affirmative defenses, including Queens Capital's first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, 10th, 11th, 12th, 13th, 14th, 15th, 17th, 19th, 20th, 21st, and 22nd affirmative defenses, and Cunningham's first, fourth, fifth, sixth, seventh, eighth, ninth, 10th, 11th, 12th, 13th, and 15th affirmative defenses, are deemed waived. *See Cuculich v. Rigos*, No. 21-cv-06752, 2024 WL 1177914, at *9 n.8 (S.D.N.Y. Mar. 19, 2024) ("Although [the defendant] raised . . . [o]ther [d]efenses in his [a]nswer, he did not assert any of these defenses in his [o]pposition to the [m]otion and, therefore, they have been waived with respect to the question of liability."); *OneWest Bank, N.A. v. Marchassalla*, No. 15-cv-00394, 2016 WL 8711438, at *3 (E.D.N.Y. Sept. 30, 2016) (deeming each of the defendants' affirmative defenses waived except for the affirmative defense addressed in the defendants' opposition to motion for summary judgment); *Nissan Motor Acceptance Corp. v. Nemet Motors, LLC*, No. 19-cv-03284, 2022 WL 4651667, at *3 (E.D.N.Y. Sept. 29, 2022) (finding that the defendants waived

affirmative defenses to foreclosure action where they declined to assert any of the defenses previously raised).

As it pertains to the affirmative defenses that defendants do present arguments for, the Court concludes that these defenses fail for the reasons stated below.

### A. *Recoverable Mortgage Balance*

Defendants raise two interrelated affirmative defenses pertaining to the amount recoverable under the Loan. First, defendants argue that because the Mortgage was payable in installments, and the statute of limitations begins to run from the date each installment becomes due, "[a]t least a portion of the principal payments must be time barred[.]" Queens Opp'n 16; *see also* Cunningham Opp'n 12. Second, and relatedly, because a "substantial portion of the principal payments" may be barred by the statute of limitations, defendants contend that there is an issue of fact as to whether the Court has diversity jurisdiction "i.e., whether the amount in controversy, exclusive of interest, exceeds $75,000." Queens Opp'n 16; *see also* Cunningham Opp'n 10, 12. The Court addresses each defense in turn.

### i.    Statute of Limitations

Plaintiff agrees that the statute of limitations for foreclosure actions under New York law begins to run on the date each installment becomes due. Mot. 38. However, plaintiff argues that "once a mortgage that is payable in installments is accelerated, the entire amount is due[,] and the statute of limitations begins to run on the entire amount." Reply 11. And here, in plaintiff's view, the principal balance of the Loan was accelerated on January 2, 2024, when it commenced this action. Reply 12. Moreover, although plaintiff concedes that it may not recover for the interest installments due more than six years prior to this action, "[p]laintiff is not seeking to collect those amounts." Reply 11.

Instead, plaintiff states that it is seeking to recover amounts "within the applicable statute of limitations period," including the unpaid principal balance of the Loan which came due—and triggered the statute of limitations—when plaintiff accelerated the Loan by commencing this action. Reply 12. Plaintiff thus contends that because it is at least entitled to recover the original unpaid principal balance of the Loan—$83,932.59—the amount-in-controversy requirement has been satisfied. *See* Mot. 21; *see also* Reply 12.

The parties correctly point out that the statute of limitations for a foreclosure action under New York law is six years. N.Y. C.P.L.R. § 213(4). When a mortgage is payable in installments, "separate causes of action accrue for each installment that is not paid, and the statute of limitations begins to run, on the date each installment becomes due." *53rd St., LLC v. U.S. Bank N.A.*, 8 F.4th 74, 78 (2d Cir. 2021). "However, the law is well settled that, even if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the [s]tatute of [l]imitations begins to run on the entire debt." *Id.* A mortgage may be accelerated by the commencement of a foreclosure action. *Brown v. Amarante*, No. 23-cv-03514, 2024 WL 4716364, at *15 (S.D.N.Y. Nov. 8, 2024), *report and recommendation adopted*, 2025 WL 934318, at *3 (Mar. 27, 2025); *see also Article 13 LLC v. Ponce De Leon Fed. Bank*, 132 F.4th 586, 589 (2d Cir. 2025) ("[T]he six-year statute of limitations on an action to foreclose on a mortgage begins to run when a foreclosure action is commenced, and the mortgage debt is accelerated, or the entire mortgage amount made immediately due.") (citing N.Y. C.P.L.R. § 213(4)). If acceleration is optional under the mortgage, then the "mortgagor must be provided with notice of the mortgagee's decision to exercise the option to accelerate the mortgage debt[,] and such notice must be clear and unequivocal." *McIntosh v. Fed. Nat'l Mortg. Ass'n*, No. 15-cv-08073, 2016 WL 4083434, at *5 (S.D.N.Y. July 25,

2016); *see also United States v. Alessi*, 599 F.2d 513, 515 n.4 (2d Cir. 1979) ("Such acceleration must consist of either notice of election to the [m]ortgagor or of some unequivocal overt act (such as initiating a foreclosure suit) manifesting an election in such a way as to entitle the mortgagor, if he desires, to discharge the principal of the mortgage.").

Here, Queens Capital purchased the property subject to the Mortgage in February 2022. Queens 56.1 ¶¶ 11, 13. The Mortgage contains an acceleration provision providing that the lender "may" require "[i]mmediate [p]ayment in [f]ull," in the event of the borrower's default. *See* Decl. of Armando Calvillo Ex. B at 7. Acceleration permits a lender to recover the entire unpaid principal on a loan, and gives rise to a new cause of action. *See Cap. Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 296 (2d Cir. 2009) ("The normal consequence of acceleration is that interest payments that would have been due in the future are no longer due, because, after acceleration, the entire principal is immediately due and owing; in other words, future interest payments are unearned because the creditor is no longer loaning the debtor the principal.") (collecting cases), *cert. denied* 558 U.S. 938 (2009); *see also Del Rio v. McCabe, Weisberg & Conway, LLC*, No. 19-cv-10312, 2021 WL 5331676, at *3 (S.D.N.Y. Nov. 16, 2021) ("[A] cause of action to recover the entire balance of the debt accrues at the time the loan is accelerated, triggering the six-year statute of limitations to commence a foreclosure action."); *Blakeslee v. Royal Ins. of Co. of Am.*, No. 93-cv-01633, 1998 WL 209623, at *3 (S.D.N.Y. Apr. 29, 1998) ("[A] cause of action on a note accrues when the note holder elects to accelerate the debt due to default, or, in the absence of debt acceleration, when the note matures.").

Pursuant to the Mortgage's acceleration provision, Statebridge—through its attorneys—issued defendant Cunningham the Notice of Default, informing him that the failure to cure by April 23, 2021, "may result in the acceleration of [his] loan." Notice of Default 52; *see also* NDF1 56.1 Stmt. ¶ 18. The Notice of Default further provided that "[u]pon acceleration, the total amount of the debt will be immediately due and payable without further demand and a lawsuit to foreclose the mortgage may be commenced." Notice of Default 52. Therefore, plaintiff's acceleration of the Mortgage by commencing this action triggered the statute of limitations on the entire debt, and the instant action is not time-barred. *See 1077 Madison St. LLC v. March*, No. 14-cv-04253, 2015 WL 5093563, at *2 (E.D.N.Y. Aug. 28, 2015) (explaining that statute of limitations defense did not bar foreclosure action where action was commenced within six years of when the mortgage was accelerated). Moreover, because Queens Capital does not dispute that it purchased the property subject to the Mortgage, that the Mortgage contains an acceleration provision, and that plaintiff validly accelerated the Mortgage, Queens 56.1 ¶¶ 13, 15; *see also* Queens Opp'n 15–16, it fails to raise a triable issue of fact that plaintiff accelerated the unpaid principal—thus triggering the statute of limitations—by commencing this foreclosure action.

Accordingly, Queens Capital's eighteenth affirmative defense is DISMISSED.

### ii.    Amount-in-Controversy

Defendants argue that even if the entire action is not barred by the statute of limitations, "[a]t least a portion of the principal payments must be time barred." Queens Opp'n 16; *see also* Cunningham Opp'n 12. Defendants point out that the unpaid principal on the Loan, $83,932.59, "has remained the same from the alleged 2007 default." Queens Opp'n 16; *see also* Cunningham Opp'n 12. And according to defendants, because

"[p]laintiff cannot collect on any part of the expired installment payments, including principal," there exists a triable issue of fact as to whether the amount-in-controversy requirement is met. Cunningham Opp'n 12; *see also* Queens Opp'n 16.

Plaintiff responds that the statute of limitations does not preclude it from recovering the entire unpaid principal of the Loan. *See* Reply 12. Plaintiff argues that defendants "provide[] no precedent or law to support their position that [p]laintiff is required to reduce the principal balance owed on the Loan" based on prior unpaid installments barred by the statute of limitations. Reply 12. Plaintiff further argues that even if defendants had made timely payments pursuant to the Note, "the unpaid principal balance *alone* on December 1, 2017 (the date [p]laintiff advanced the due-date to) would have been $77,814.96." Reply 12 (emphasis in original). In other words, "even if [p]laintiff had to waive some of the principal balance" because of the statute of limitations, the amount-in-controversy requirement would be met. Reply 12.

The Court concludes that defendants fail to raise a triable issue of fact as to this defense. Defendants' argument that a portion of the unpaid principal of the Loan is time-barred is based on the faulty premise that acceleration of a mortgage is a mechanism strictly to recoup past unpaid installments. *See* Reply 11 ("The interest installments for each separate installment that came due more than six years before this [a]ction was commenced are not recoverable however, [p]laintiff is not seeking to collect those amounts."). But under New York law, acceleration is a contractual device permitting a mortgagee to recover the entire unpaid principal, not simply unpaid mortgage

21

installments.[5] *See Gizzi v. Hall*, 767 N.Y.S.2d 469, 472 (3d Dep't 2003) ("Acceleration entitles [the holder of the mortgage] to all of the mortgage principal still owed as of the date the acceleration option was exercised, not the total of all scheduled mortgage payments from that date throughout the remaining term of the mortgage."); *New Bank of New England, N.A. v. Toronto-Dominion Bank*, 768 F. Supp. 1017, 1023 (S.D.N.Y. 1991) ("Acceleration is a remedy that can only be provided by—and exercised in accordance with—contract.").

Because plaintiff's option to exercise the acceleration provision "independently arises from the provisions of the [N]ote between the parties," *U.S. Bank Nat'l Ass'n v. McCaffery*, 130 N.Y.S.3d 33, 36 (2d Dep't 2020), it gives rise to a distinct cause of action for the unpaid principal. *See Freedom Mortg. Corp. v. Engel*, 37 N.Y.3d 1, 21–23 (2021) ("[A] cause of action to recover the entire balance of the debt accrues at the time the loan is accelerated, triggering the six-year statute of limitations to commence a foreclosure action."); *see also HSBC Bank, USA NA v. Margineanu*, 86 N.Y.S.3d 694, 705 (Sup. Ct. 2018) (explaining that a mortgage contract with acceleration option "creates a new cause of action").

Thus, here, once plaintiff accelerated the mortgage by commencing the foreclosure action, "the entire" $83,932.59 balance was due, and the statute of limitations began to run on the entire debt. *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 87 (E.D.N.Y.

---

[5]    For this reason, defendants' argument that acceleration of the Mortgage did not "reset" the statute of limitations for earlier missed payments is unavailing. Queens Opp'n 16 (citing *PACE Indus. Union-Mgmt. Pension Fund v. Singer*, No. 10-cv-02387, 2011 WL 841142, at *3 (E.D.N.Y. Mar. 8, 2011)); *see PACE*, 2011 WL 841142, at *3 (explaining that although "the statute of limitations has run for the payments that were due more than six years before the filing of the complaint . . . the balance of the payments remain due and payable").

2019) (quoting *Wells Fargo Bank, N.A. v. Burke*, 943 N.Y.S.2d 540 (2d Dep't 2012)); *see also CIT Bank, N.A. v. Zisman*, No. 20-1314, 2024 WL 763392, at *1 (2d Cir. Feb. 26, 2024) (summary order) ("Under New York law, once a mortgage debt is accelerated, the entire amount is due and the statute of limitations begins to run on the entire debt."). Therefore, the statute of limitations does not preclude plaintiff from recovering the entire unpaid principal on the Mortgage, and defendants fail to raise a triable issue of fact as to whether the amount in controversy exceeds $75,000.[6] *See Taylor, Bean, Whitaker Mort. Corp. v. Daniel*, 204 N.Y.S.3d 512 (Mem) (1st Dep't 2024) (explaining that "installment payments that have accrued more than six years prior to commencement of the action are time-barred," but that the plaintiff "was entitled to recover on installment payments that accrued within six years prior to commencement of th[e] action and on the full accelerated debt following the . . . acceleration"); *see also RL 900 Park, LLC v. Ender*, No. 18-cv-12121, 2021 WL 738705, at *6 (S.D.N.Y. Feb. 25, 2021) (holding that the amount in controversy was at least the outstanding principal value of the mortgage).

Accordingly, Queens Capital's sixteenth and Cunningham's second affirmative defenses are DISMISSED.

---

[6]    To the extent that defendants' affirmative defenses contest the "exact amount owed" under the mortgage, such defenses "do[] not preclude summary judgment directing a foreclosure sale." *CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 199 (S.D.N.Y. 2018) (collecting cases); *accord Nissan Motor Acceptance Corp. v. Nemet Motors, LLC*, No. 19-cv-03284, 2022 WL 4651667, at *5 (E.D.N.Y. Sept. 29, 2022) (explaining that although factual disputes could "impact any calculation of amounts owed pursuant to the [n]otes and the other agreements" between the parties, "tho[s]e issues are irrelevant to whether [the plaintiff] is entitled to an order of foreclosure and sale on the [n]otes and mortgages"). For the avoidance of doubt, the Court does not opine on whether the statute of limitations precludes recovery of unpaid interest installments due under the Loan.

B. *Requisite Notices*

Cunningham raises two affirmative defenses pertaining to statutory and contractual requirements for foreclosure on the subject property. First, defendant argues that plaintiff fails to demonstrate "strict compliance with RPAPL § 1306," a condition precedent to foreclosure. Cunningham Opp'n 10. Cunningham reprises his argument that the Abeyta Declaration is inadmissible, and thus plaintiff fails to lay the proper evidentiary foundation for the Section 1306 Notice. Opp'n 10. He also argues that the Section 1306 Notice does not strictly comply with RPAPL § 1306 "because the borrower's phone number is not listed on that document; instead, there is a redaction." Opp'n 10. Cunningham separately argues that plaintiff "fails to demonstrate mailing of the default notice required under the terms of the Mortgage or the RPAPL § 1304 [n]otices." Cunningham Opp'n 10. That is, defendant argues that because plaintiff fails to properly authenticate the 90-Day Notices, it fails to demonstrate by competent proof that the notices were in fact mailed. *See* Cunningham Opp'n 11. Even if the 90-Day Notices were properly authenticated, defendant argues that there is still "a triable issue of fact with respect to the purported default date." Cunningham Opp'n 11. Specifically, Cunningham points to the language of the 90-Day Notices stating that "[a]s of March 19, 2021, your home loan is 5,102 days . . . in default." Opp'n 11 (quoting 90-Day Notice at 17). And according to Cunningham, that corresponds to a date in 2007, but "[p]laintiff alleges that the default date is December 1, 2017." Cunningham Opp'n 12. Defendant argues this discrepancy is "fatal" to plaintiff's Motion. Cunningham Opp'n 12.

As a threshold matter, as plaintiff points out, Cunningham lacks standing to raise these defenses to challenge the foreclosure action "because he is not the owner of the [subject] [p]roperty and has not been since February 2022." Mot. 14. "A party who

24

conveys his or her interest in property that is the subject of a foreclosure action effectively divests himself or herself of standing to challenge a plaintiff's request for a judgment of foreclosure and sale." *Valiotis v. Bekas*, 143 N.Y.S.3d 74, 75 (2d Dep't 2021); *see also Jones v. Kaufman*, No. 25-cv-04407, 2025 WL 1755122, at *1 (S.D.N.Y. June 24, 2025) ("A plaintiff who does not own the property subject to foreclosure does not have standing to challenge that foreclosure.") (collecting cases). Cunningham does not dispute that he sold the property to Queens Capital on February 22, 2022. Cunningham 56.1 ¶ 11. Therefore, Cunningham does not have standing to challenge the foreclosure and his affirmative defenses must be dismissed.

Even if Cunningham had standing to challenge the foreclosure, his defenses are meritless. As set forth above, the Abeyta Declaration is properly admissible and lays a sufficient foundation for the Section 1306 Notice. *See* supra Part I.A. Defendant's argument that the Section 1306 Notice does not strictly comply with RPAPL § 1306 because the version of the document filed with the Court redacts the phone number is puzzling.[7] *See* Cunningham Opp'n 10. In any event, plaintiff filed an unredacted version of the Section 1306 Notice in connection with its Reply, confirming that the Section 1306 Notice is not deficient. *See* Abeyta Reply Decl. Ex. 2, ECF No. 87-10. Cunningham's argument that the 90-Day Notices are not properly authenticated is directly refuted by the Calvillo Declaration in which Calvillo—plaintiff's authorized representative—attests that plaintiff's prior counsel mailed the 90-Day Notices, and that the attached copies of

---

[7]     To the extent Cunningham argues that plaintiff's "unilateral" redaction of phone numbers violated Federal Rule of Civil Procedure 5.2, Cunningham Opp'n 10, he fails to explain how plaintiff's alleged failure to seek Court leave to redact the phone numbers bears on the sufficiency of the Section 1306 Notice itself. Moreover, he provides no authority indicating that the proper sanction for any such violation is denying plaintiff's Motion.

the 90-Day Notices and affirmations of mailing are "true and accurate." Calvillo Decl. ¶ 18; 90-Day Notices; *see also Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. Ne. Serv. Grp. Ltd.*, No. 12-cv-02010, 2012 WL 2861337, at *3 (S.D.N.Y. July 9, 2012) ("Proper authentication requires submission with an affidavit or other sworn statement attesting to what the [document] actually is and whether it is a true and correct copy of what it purports to be."). To the extent Cunningham argues that there was a discrepancy between plaintiff's alleged default date and the default date in the 90-Day Notice—"[t]he 90-Day Notices reflect that, 'as of March 19, 2021, your home loan is 5,102 days in default.' This would mean the default date was April 1, 2007, as of March 19, 2021. The Complaint reflects this default date. Plaintiff never alleged that the default date is December 1, 2017; [p]laintiff alleged that the default date was *advanced* to December 1, 2017[.]" Reply 14 (emphasis in original).

Accordingly, Cunningham's third and fourteenth affirmative defenses are DISMISSED.

## III.    Remedies

In addition to its request for an award of summary judgment and an order dismissing defendants' affirmative defenses, plaintiff also requests (1) attorney's fees and costs, Mot. 40; (2) that the subject property be sold as one parcel, Mot. 41–42; and (3) that the Court award damages, Mot. 41–42. Having made a determination as to liability, the Court respectfully refers this matter to Magistrate Judge Joseph A. Marutollo for a report and recommendation as to plaintiff's requests for damages, fees, and to sell the subject property as one parcel. *See Bank of Am. v. Viders*, No. 10-cv-00025, 2010 WL 5452118, at *5 (E.D.N.Y. Dec. 28, 2010); *see also One West Bank, FSB v. Davi*, No. 13-cv-01055, 2014 WL 4897311, at *4 (N.D.N.Y. Sept. 30, 2014); *Wells Fargo Bank, N.A. v. 390*

*Park Ave. Assocs., LLC*, No. 16-cv-09112, 2018 WL 4373996, at *8 (S.D.N.Y. Sept. 12, 2018).

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is GRANTED as to plaintiff's claim for foreclosure on the subject property and judgment against defendants Cunningham and Queens Capital. Defendants' affirmative defenses are dismissed. This case is respectfully referred to Magistrate Judge Marutollo for a report and recommendation as to plaintiff's requests for damages, fees, and to sell the property as one parcel, and for any further proceedings deemed necessary.

**SO ORDERED.**

   */s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated:        November 26, 2025
              Brooklyn, New York